IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CLAUDETTE SUE YOUNGS | ) | |
| | ) | |
| v. | ) | No. 2:14-0044 |
| | ) | |
| NANCY A. BERRYHILL[1] | ) | |
| Acting Commissioner of | ) | |
| Social Security | ) | |

To: The Honorable Kevin H. Sharp, Chief District Judge

**R E P O R T A N D R E C O M M E N D A T I O N**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), as provided under Title II and XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 13), to which Defendant has responded (Docket Entry No. 17).

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 13) be **DENIED**.

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

## I. INTRODUCTION

Plaintiff filed an application for a period of disability, DIB, and SSI on August 8, 2011. *See* Transcript of the Administrative Record (Docket Entry No. 10) at 40, 102-03.[2] She alleged a disability onset date of May 9, 2009. AR 40.[3] Plaintiff asserted that she was unable to work due to depression, anxiety, hearing loss, back problems, vision loss, blood clots, rheumatoid arthritis, high cholesterol, shoulder pain, chronic obstructive pulmonary disease ("COPD"), migraines, and a genetic disorder. AR 122-25.

Plaintiff's applications were denied initially and upon reconsideration. AR 102-05. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ James Dixon on June 6, 2013. AR 57. On July 31, 2013, the ALJ denied the claim. AR 37-39. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on February 26, 2014 (AR 2-5), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on July 31, 2013 AR 37-39. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

[3] Plaintiff's applications list an alleged onset date of August 8, 1969. AR 102-03. During her hearing, however, Plaintiff confirmed that she was alleging an onset date of May 9, 2009. AR 66.

2. The claimant has not engaged in substantial gainful activity since May 9, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: hearing loss (20 CFR 404.1520(c) and 416.920(c)).

***

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

***

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She has limited hearing, but it is sufficient for normal conversation. She should avoid jobs that require excellent hearing. She should avoid concentrated exposure to environments that are louder than normal speaking level.

***

6. The claimant is capable of performing past relevant work as a personnel recruiter, administrative clerk, and cashier/checker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

***

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 9, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

AR 42-51.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed

impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra; Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra.*

If the claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428. 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from

doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

**C. The ALJ's Five -Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved the Plaintiff's claim at step four of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was able to perform past relevant work as a personnel recruiter, administrative clerk, and cashier/checker, and thus concluded that Plaintiff has not been under a disability since the alleged onset date of May 9, 2009. AR 40-51.

**D. Plaintiff's Assertions of Error**

Plaintiff argues that the ALJ erred by: (1) failing to find that she suffers from an impairment or a combination of impairments that meet or medically equal one of the listed impairments in Listing 20 CFR Part 404, 416.920(d), 416.925 and 416.926, Subpart P, Appendix 1; (2) failing to provide good reasons for rejecting the opinions of her treating physician; and (3) failing to properly consider Plaintiff's obesity as required by Social Security Ruling 02-01p. DE 14 at 6. Plaintiff therefore requests that this case be remanded for further consideration of her condition. *Id.* at 16.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). The Court will address each of Plaintiff's assertions of error below.

**1. Whether Plaintiff's impairments equal a listed impairment.**

Plaintiff first argues that the ALJ erred by failing to find that her cervical and lumbar spine conditions represent the medical equivalent of Listing 1.02B, which involves an "inability to perform fine and gross movements effectively" due to impairment of a major peripheral joint in each upper extremity. DE 14 at 7-8; 20 C.F.R., Pt. 404, Subpt. P, App. 1. Plaintiff claims that the functional limitations articulated by her treating physician, Dr. Kenneth Beaty, demonstrate that her alleged spinal injury meets the definition of a major dysfunction of a joint. DE 14 at 8. Plaintiff additionally faults the ALJ for his "paltry conclusion" at step three of the sequential evaluation, arguing that the ALJ's "minimal explanation" was insufficient to satisfy the Commissioner's duty under 42 U.S.C. § 405(b)(1) to make "findings of fact and decisions as to the rights of individuals applying for disability." *Id*. at 9.

It is the burden of the claimant to demonstrate that she meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). This burden requires that the claimant prove through medical evidence that her impairment meets all of the specified criteria contained in a particular listing, and an impairment that "manifests only some of those criteria, no matter how severely, does not qualify." *Lance v. Astrue*, No. 3:07-cv-411, 2008 WL 3200718, at *4 (E.D. Tenn. Aug. 5, 2008) (internal citation omitted). Because a finding that a condition meets a listed impairment operates to cut off further inquiry as to the claimant's disability, the listed impairments should not be read expansively. *Id*. (internal citation omitted).

Defendant concedes that the ALJ did not evaluate Plaintiff's alleged back issues at step three of the analysis, but argues that the ALJ was not required to in light of his determination that Plaintiff's back condition did not represent a severe impairment. DE 17 at 4-5. This argument is congruent with Sixth Circuit precedent, which holds that even if an ALJ does not make sufficient factual findings regarding whether an alleged impairment meets the severity of a Listed Impairment, such an error is harmless if the claimant "has not shown that [her] impairments met or medically equaled in severity any listed impairment." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014). Therefore, the issue is whether Plaintiff has put forward sufficient evidence to meet Listing 1.02B, as she alleges.

To meet Listing 1.02B, Plaintiff must demonstrate her "inability to perform fine and gross movements effectively, as defined in 1.00B2c." This inability is defined in the following manner:

> What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or

> complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R., Pt. 404, Subpt. P, App. 1.

In this case, Plaintiff fails to proffer evidence demonstrating that her impairments rise to the level of severity delineated in 1.00B2c. Indeed, the only evidence Plaintiff references in support of her argument for meeting Listing 1.02B is the decrease in her range of motion noted in the medical source statement ("MSS") completed by Dr. Beaty on March 10, 2013. AR 566. Due to this alleged decline in range of motion, Dr. Beaty concluded that Plaintiff would only "occasionally" be able to engage in grasping, reaching, fingering, handling, feeling, and pushing/pulling, meaning that Plaintiff would be able to perform such functions "from very little up to 1/3 of an 8 hour day." AR 566. However, Dr. Beaty's own findings regarding range of motion do not support the severity of these manipulation limitations. During the two office visits that preceded the MSS, including a visit that took place less than one month before the MSS was completed, Dr. Beaty found that Plaintiff's range of motion and strength were completely normal. AR 619, 623. In May of 2013, less than three months after completing the MSS, Dr. Beaty again found that Plaintiff's range of motion and strength were normal (AR 643), and similarly noted normal range of motion and strength in a subsequent visit on June 5, 2013. AR 647.

When prompted to provide medical findings to support his severe manipulation restrictions, Dr. Beaty also cited Plaintiff's "constant swelling" and "tingling" in her bilateral hands. AR 566. However, Dr. Beaty's own records again fail to support his assessment. Plaintiff

made no complaints of swelling or tingling in her hands during the entire year of treatment that preceded the MSS (AR 596-624), except for a temporarily swollen left middle finger that she suffered in August of 2012 after she fell on her left hand while walking her dog. AR 610, 612. Plaintiff complained of "stiffness" in her fingers and wrists during a single visit on March 26, 2013 (AR 638), but made no complaints involving swelling or tingling in either of her hands during any subsequent treatment with Dr. Beaty. AR 641-48. She also continued to exhibit "[n[ormal range of motion, strength, and tone" throughout her treatment with Dr. Beaty, both before and after Dr. Beaty completed the MSS, as discussed by the ALJ. AR 48, 619, 623, 643, 647. The Court also notes that Plaintiff's brief cites no evidence that she experienced swelling or tingling in her bilateral hands at any point in time.

Dr. Beaty's MSS is further undermined by the findings of Dr. Rodger Zwemer. Plaintiff was referred by Dr. Beaty, a family practitioner, to Dr. Zwemer, an orthopedist, due to ongoing complaints of joint point. AR 289-90. However, Dr. Zwemer found that Plaintiff's symptoms were "not consistent with anything I have ever encountered" and stated that he "could find absolutely nothing wrong with this lady." AR 290. This included a normal range of motion in her legs and hips, "excellent" motor power, and no indications of swelling. AR 290. Dr. Zwemer concluded by stating that Plaintiff's examination was "normal as far as I can tell by x-ray and physical exam." AR 290. As noted by the ALJ, "[i]t is difficult to attribute the degree of limitation that [Plaintiff] alleges from her medical conditions in view of the essentially normal physical findings." AR 49.

A consultative examination performed by Dr. Donita Keown similarly produced no findings that would support Dr. Beaty's severe limitations with respect to manipulation. Dr. Keown found no issues with Plaintiff's hands, normal flexion and extension, and no swelling

in the wrist joints. AR 459-60. Dr. Keown also stated that Plaintiff demonstrated "pain behaviors and symptom magnification," and that she described her medical problems "vaguely and nonspecifically." AR 459.

Simply put, there is insufficient evidence in the record to support a determination that Plaintiff's impairment rises to the level of severity expressed in Listing 1.02B. *See Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that [she] meets or equals a listed impairment, [she] must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") (citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)). An impairment satisfies a listing "only when it manifests the specific findings described in the medical criteria for that particular impairment." *Bluer v. Comm'r of Soc. Sec.*, No. 1:13-cv-22, 2014 WL 700424, at *4 (W.D. Mich. Feb. 24, 2014) (citing 20 C.F.R. § 404.1525(d)). Listing 1.02B requires an "inability to perform fine and gross movements effectively," a limitation which is simply not documented in the evidence of record. This dooms Plaintiff's argument that her condition meets the listing, as a claimant cannot satisfy a particular listing unless she shows that all of the requirements of that listing are present. *Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir. 1987) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). The Court thus concludes that the ALJ's failure to discuss in the opinion whether Plaintiff's condition rose to the level of Listing 1.02B represents harmless error.

**2. The ALJ's rejection of the treating physician's opinion.**

Plaintiff next claims that the ALJ erred by failing to give controlling weight to the opinion of Dr. Beaty, her treating physician. Plaintiff recites Sixth Circuit opinions regarding the

circumstances under which an ALJ must accord the treating physician's opinion controlling weight, and contends that the ALJ "cherry-picked" the evidence of record in assigning Dr. Beaty's opinion little weight. DE 14 at 12-13.

Dr. Beaty's MSS delineated several restrictions relating to Plaintiff's condition, including an inability to sit or stand for more than two (2) hours during a workday, an inability to walk for more than one (1) hour during a workday, and an ability to lift and carry no more than five (5) pounds frequently.[4] AR 565-66. As discussed *supra*, Dr. Beaty also opined that Plaintiff would only be able to "occasionally" (from 1/3 to 2/3 of an eight-hour workday) grasp, reach, finger, handle, feel, and push/pull. AR 566. He further opined that Plaintiff would only be able to "occasionally" balance, squat, kneel, crouch, crawl, bend, twist, and stoop, and concluded that Plaintiff could never climb. AR 567.

Plaintiff quotes the well-established principle contained in 20 C.F.R. § 404.1527(c)(2) that a treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. In arguing that Dr. Beaty's opinion fits this criteria, Plaintiff states that "the record is replete that [Plaintiff's] cervical spine muscle spasms cause loss of vision in her left eye, as well as [] severe headaches[.]" DE 14 at 12-13. Despite this contention, Plaintiff cites only an office note from December of 2009, at which point Plaintiff complained of a temporary loss of vision. AR 305. Because of this complaint, Dr. Beaty referred Plaintiff for treatment with an ophthalmologist (AR 307), although the only evidence of any follow up treatment with an ophthalmologist involves a single visit with Dr. James Grisolano

[4] According to the MSS, "frequently" indicates a time span ranging from 1/3 to 2/3 of an eight-hour workday. AR 566.

nearly two years later, at which point Plaintiff was advised to discontinue her use of Visine, decrease her caffeine intake, and get more sleep. AR 284.

Moreover, as noted by the ALJ, Dr. Beaty provided no explanation for the visual limitations contained in his MSS, which state simply that Plaintiff's near acuity, far acuity, depth perception, and accommodation are "limited." AR 567. When prompted to describe how these specific faculties were "limited" and provide medical findings to support the assessment, Dr. Beaty stated only, "[patient] with blurred vision." AR 567. The ALJ also discussed how Dr. Beaty's opinion was undermined by his final encounter with Plaintiff prior to completing the MSS, at which time he found that Plaintiff was "[n]egative for blurred vision and eye pain." AR 50, 621. Furthermore, the Court notes that despite Plaintiff's allegation that her severe headaches are well-documented in the record (DE 14 at 12-13), Dr. Beaty's MSS did not identify severe headaches as a diagnosis, nor are severe headaches mentioned anywhere in the MSS. AR 565-68.

Nevertheless, Plaintiff additionally argues that the ALJ's opinion is inadequate because it "failed to even mention that Dr. Beaty treated [Plaintiff] from 2008 until March 2013." DE 14 at 12. This argument is unavailing, however, as length of treatment is just one of several factors evaluated by an ALJ when considering the amount of weight to give to a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(1)-(6). Moreover, the ALJ "is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) (internal citation omitted). *See also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) ("[I]t is well settled that … [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party) (internal

citation omitted). The ALJ is only required to provide "good reasons" for discounting a treating physician's opinions, with such reasons being "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5).

Here, the ALJ discussed Dr. Beaty's failure to explain the limitations contained in his MSS, medical records documenting Dr. Beaty's own treatment with Plaintiff that undermined his conclusions, and x-ray findings that demonstrated normal and "mild" conditions that weighed against the severity of the restrictions delineated in the MSS. AR 50. The ALJ instead appropriately accorded significant weight to the opinion of Dr. Keown, a state agency physician, based on its consistency with the findings of Dr. Zwemer, the only orthopedist who treated Plaintiff. *See Overholt v. Astrue*, No. 3:07-cv-322, 2008 WL 2645662, at *9 (E.D. Tenn. July 2, 2008) (noting that an ALJ "is entitled to rely on the opinions of state agency doctors") (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)); 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues relating to his or her area of specialty than to the opinion of a source who is not a specialist."); 20 C.F.R. § 404.1527(e) ("State agency medical and psychological consultants … are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."). The Court therefore finds no error in the ALJ's decision to discount the opinion of Dr. Beaty.

**3. Plaintiff's obesity.**

Plaintiff finally argues that the ALJ failed to consider Plaintiff's alleged obesity as required by SSR 02-1p. Plaintiff contends that the ALJ must consider the impact of obesity on a claimant's RFC, and notes that the ALJ's opinion does not reference obesity. DE 14 at 15-16.

Plaintiff points to a medical note from December 28, 2009 indicating that Plaintiff at one point had a body mass index ("BMI") of 31.18. AR 306. However, the most recent note in the record, dated June 5, 2013, indicates that Plaintiff has a BMI of 29.9 (AR 639), which does not even constitute obesity under SSR 02-01p. 2002 WL 34686281, at *2. The Court also notes that, as previously discussed, an ALJ's failure to specifically reference a piece of evidence in the record does not mean that it was not considered. *See Adams v. Comm'r of Soc. Sec.*, No. 4:13-cv-22, 2014 WL 3368692, at *11 (E.D. Tenn. July 9, 2014) ("[T]here is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion.") (quoting *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002)).

Moreover, Plaintiff incorrectly suggests that the ALJ's failure to reference obesity in the opinion violates SSR 02-1p. DE 14 at 15-16. As noted in Defendant's brief, the Sixth Circuit has stated that it is "a mischaracterization to suggest that Social Security Ruling 02-1p offers any particular procedural mode of analysis for obese disability claimants." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006)). Instead, SSR 02-1p merely states that obesity, in combination with other impairments, "may" increase the severity of other limitations. *Bledsoe*, 165 F. App'x at 412. Additionally, the burden is on Plaintiff, and not the ALJ, to produce evidence demonstrating that obesity imposes functional limitations. *Boles v. Colvin*, No. 2:12-cv-0079, 2015 WL 4506174, at *2 (M.D. Tenn. July 23, 2015) (citing *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x

662, 667 (6th Cir. 2004)). Plaintiff makes no such effort in this case, and her argument therefore fails.

## V. RECOMMENDATION

For the above-stated reasons, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (DE 13) be DENIED and that the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge